UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AMICA MUTUAL INSURANCE           :
COMPANY,                         :    C.A. No.:
    Plaintiff,               :
                                 :
                                 :
HYUNDAI MOTOR AMERICA,           :
HYUNDAI MOTOR COMPANY,           :
KIA AMERICA, INC., AND           :
KIA CORPORATION,                 :
    Defendants.              :

## PLAINTIFF'S COMPLAINT AND JURY TRIAL DEMAND

## BACKGROUND

The plaintiff, Amica Mutual Insurance Company, bring this action against Hyundai Motor America, Hyundai Motor Company, Kia America, Inc., and Kia Corporation arising out of the design, manufacture and distribution of motor vehicle vehicles, including certain 2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles. These vehicles were defective because they did not contain an engine immobilizer (or any equivalent operational anti-theft equipment required by federal law and mandated by industry standards) and were therefore susceptible to thefts and/or vandalism. The Defendants knew or reasonably should have known that these vehicles were defective and failed to disclose this information to consumers. The Defendants breached express and implied promises and warranties to their consumers, including Plaintiff's insureds. As a direct and proximate result of Defendant's acts or omissions, Plaintiff paid for covered damages and losses sustained by Plaintiff's insureds as a result of theft, attempted theft, vandalism or other damage to the Vehicles. By virtue of its claim payments and associated adjustment expenses, collectively in an amount exceeding six million seven hundred thousand dollars ($6,700,000), Amica is now legally, equitably and contractually subrogated to the rights, interests and claims of its Insureds against all responsible third parties, including the Defendants named herein. This action seeks recovery of all amounts paid and to be paid to Insureds, and all adjustment expenses incurred by Amica in making such payments.

1

## PARTIES

1.      Plaintiff, AMICA Mutual Insurance Company ("Amica"), is an insurance company organized and existing under the laws of the State of Rhode Island, with its principal place of business at 100 Amica Way, Lincoln, RI 02865.

2.      Defendant, Hyundai Motor Company ("HMC"), is a South Korean corporation, with its headquarters located in Seoul, South Korea. HMC is actively engaged in manufacturing, assembling, marketing, and distributing Hyundai vehicles sold in Rhode Island and the rest of the United States.

3.      Defendant, Hyundai Motor America ("HMA"), is a California corporation, with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, CA 92708. HMA engages in substantial business throughout the United States, including in the State of Rhode Island. HMA is a subsidiary of its parent corporation, HMC.

4.      HMC conducts substantial business in the State of Rhode Island, actively seeks to serve the market for automobiles and related products in the State, and purposefully placed the Vehicles that are the subject of this action into the stream of commerce for sale in the United States generally and Rhode Island specifically.

5.      On information and belief, HMC and HMA direct and control their dealers' operations through various written agreements, which including provisions (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; (iv) providing guidance to dealerships, and dealership personnel as to how to handle customers, including, but not limited to, handling complaints regarding the Theft Protection Defect; and (v) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.

6.      Defendant, Kia Corporation ("KC"), is a South Korean corporation with its headquarters located in Seoul, South Korea. KC is actively engaged in manufacturing, assembling, marketing, and distributing Kia vehicles sold in Rhode Island and the rest of the United States. HMC owns a 33.88% stake in KC.

7.      Defendant, Kia America, Inc. ("KA") (formerly Kia Motors America, Inc.), is a California corporation, with its principal place of business located at 111 Peter Canyon Road,

2

Irvine, CA 92606. KA engages in substantial business throughout the United States, including in the State of Rhode Island. KA is a subsidiary of KC.

8.      KC conducts substantial business in the State of Rhode Island, actively seeks to serve the market for automobiles and related products in the State, and purposefully placed the Vehicles that are the subject of this action into the stream of commerce for sale in the United States generally and Rhode Island specifically.

9.      On information and belief, KC and KA control various details regarding their dealers' operations through various written agreements, which include provisions: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; (iv) providing guidance to dealerships, and dealership personnel as to how to handle customers, including, but not limited to, handling complaints regarding the Defects associated with the vehicle; and (v) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.

10.     HMC and HMA are collectively referred to in this Complaint as "Hyundai" unless identified separately.

11.     KC and KA are collectively referred to in this Complaint as "Kia" unless identified separately.

12.     HMC, HMA, KC, and KA are collectively referred to in this Complaint as "Defendants" unless identified separately.

## JURISDICTION AND VENUE

13.     This Court has general personal jurisdiction over all Defendants because they conduct substantial business in this judicial district, and they intentionally and purposefully placed the Vehicles that are the subject of this action into the stream of commerce within Rhode Island and elsewhere in the United States.

14.     This Court also has specific personal jurisdiction over Defendants HMC and KC as both are global automobile manufacturers who purposely availed themselves of the automobile and automobile-related products' markets in Rhode Island by extensively promoting, warranting, selling, leasing and servicing, directly or indirectly, vehicles (including the Vehicles) and related automobile products in Rhode Island. Those Vehicles were defective and otherwise violated

3

federal and Rhode Island laws (as set forth in detail in this Complaint) resulting in significant damages to Amica's Insureds in Rhode Island.

15.     This Court further has specific personal jurisdiction over all Defendants as they purposely served the Rhode Island market for automobiles, and numerous insurance claims have been made to Amica within Rhode Island because of Defendants' acts or omissions.

16.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as Amica and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as all Defendants do substantial business in this judicial district, including the selling of the Vehicles described in this Complaint.

## **GENERAL ALLEGATIONS**

18.     At all relevant times, Amica insured policyholders under automobile policies for Vehicles that they purchased or leased (hereinafter "Insureds").

19.     At all relevant times, Defendants were in the business of designing, manufacturing, assembling, marketing, and distributing vehicles.

20.     At all relevant times, Defendants sold and distributed Hyundai and Kia vehicles throughout the United States.

21.     At all relevant times, Defendants represented and warranted that the vehicles they sold and distributed were safe, fit for intended uses, and free of any defects.

22.     In and after 2011, Defendants designed, manufactured and distributed vehicles, including certain 2011-2022 Hyundai vehicles and 2011-2022 Kia vehicles, that were defective and did not contain an engine immobilizer, or any equivalent operational anti-theft equipment required by federal law and mandated by industry standards (hereinafter "Vehicles"). These significant design defects made the Vehicles susceptible to thefts and vandalism.

23.     The Defendants knew or reasonably should have known that the Vehicles were defective and failed to disclose this information to consumers. The Defendants breached express and implied promises and warranties to their consumers, including Amica's policyholders.

24.     The Vehicles suffered disproportionally high rates of theft for Vehicles that are not typically targeted by car thieves.

25.     On information and belief, Defendants monitored Vehicle theft rates, and knew or should have know of the increasing number of thefts involving their vehicles, but took no action to protect their customers.

26.     Defendants failed to inform Amica's Insureds that their Vehicles were defective and refused to reimburse Amica and its Insureds for their losses incurred as a result of the defects.

27.     Defendants tacitly acknowledged that the vehicles were defective because in or about 2022 they announced that they would install immobilizers in all their vehicles.

28.     At all relevant times, including specifically at the time that Amica's Insureds purchased or leased their Vehicles, Defendants knew, or were reckless in not knowing, of the defective design; Defendants had a duty to disclose the defective design based upon their exclusive knowledge due to, among other things, the self-certification process, and given their repeated statements as to compliance with relevant safety and anti-theft standards; and Defendants never disclosed the defects to Amica's Insureds or the public at any time or place in any manner prior to 2022.

29.     Amica's Insureds purchased and/or leased their respective Vehicles from Defendants, through Defendants' authorized dealerships, with the understanding that these dealerships were acting on behalf of Defendants. Each Hyundai and Kia dealership operates as the actual and/or apparent agent of HMA and KMA respectively, which satisfies any privity requirement.

30.     Privity further exists between Defendants on the one hand, and Amica's Insureds on the other, by virtue of the express warranties provided with the Vehicles, or otherwise through their purchase and/or lease agreements.

31.     Defendants also controlled various details regarding their respective dealerships' operations through various written agreements.

32.     Amica's Insureds were the intended and direct beneficiaries of agreements between Defendants and their dealerships regarding sales and leases of the Vehicles. Upon information and belief, the agreements expressly were made for the direct benefit of Amica's Insureds as ultimate consumers of the Vehicles.

33.     Defendants' false and misleading representations in marketing materials and brochures for each of the Vehicles were intended for car purchasers and lessees, rather than the dealerships themselves.

34.     Amica brings this action to recover damages incurred due to: (a) the substandard, dangerous, and defective nature of the Vehicles manufactured, designed, assembled, marketed, supplied, sold and leased by Defendants, and (b) Defendants' subsequent misconduct in fraudulently concealing, misrepresenting and failing to warn consumers about their Vehicles' failure to conform to applicable federal and industry anti-theft standards.

35.     As a direct and proximate result of Defendants' acts or omissions, Amica has and/or will pay policy proceeds to its Insureds pursuant to their policies of insurance. Such payments include, but are not limited to, damages incurred because of the theft of Vehicles, attempted theft of Vehicles, damage to Vehicles, loss or damage to other property, and economic losses resulting from loss of use of the Vehicles.

36.     By virtue of its claim payments and associated adjustment expenses, collectively in an amount exceeding six million seven hundred thousand dollars ($6,700,000.00), Amica is now legally, equitably and contractually subrogated to the rights, interests and claims of its Insureds against all responsible third parties, including the Defendants named herein. This action seeks recovery of all amounts paid and to be paid to Amica's Insureds, and all adjustment expenses incurred by Amica in making such payments.

37.     As a result of HMC's, HMA's, KC's, and KA's knowing and active concealment and denial of the facts alleged herein, Amica and its Insureds could not have reasonably discovered the true nature of the defects associated with the vehicle. Consequently, any applicable statute(s) of limitations have been tolled: a) pursuant to the discovery rule; b) as a result of Defendants' fraudulent concealment; and/or (c) based upon principles of estoppel.

38.     The causes of action alleged herein did not accrue until Amica's Insureds discovered that their Vehicles were defective.

39.     Amica and its Insureds, through the exercise of reasonable diligence, could not have discovered that the Vehicles were defective within the applicable statute(s) of limitations.

40.     Amica and its Insureds were not in possession of sufficient information that would have caused a reasonable person to suspect that the Vehicles were defective. Further, no ordinary person would be able to discern that the Vehicles were defective. An ordinary consumer, without sophisticated knowledge of mechanical systems and anti-theft devices, would not and could not suspect that the theft or damage to their Vehicle was, in fact, attributable to the defects associated with the vehicle.

41.    For these reasons, any statute(s) of limitations applicable to Amica's claims have been tolled by operation of the discovery rule.

42.    Defendants, as the manufacturers, distributors, sellers, and/or warrantors of the Vehicles, were under a continuing duty to disclose the existence of the defects to Amica's Insureds.

43.    Defendants failed to disclosed and concealed the existence of the defects. .

44.    Due to each Defendant's concealment of the facts necessary for Amica and its Insureds to discover the existence of their claims, all applicable statute(s) of limitations have been tolled.

45.    Defendants were, and are, under a continuing duty to disclose the true character, quality, and nature of the Vehicles. Although Defendants were aware of the defects associated with the Vehicles, Defendants knowingly continued to make representations that the Vehicles complied with all federal safety and quality standards.

46.    Due to each Defendant's misrepresentations regarding the true state of the Vehicles, Defendants are estopped from asserting that any otherwise applicable statute(s) of limitations bar Amica's claims.

### COUNT I
### NEGLIGENCE

47.    Amica incorporates by reference and realleges each preceding and succeeding paragraph as though fully set forth at length herein.

48.    The claim payments and associated adjustment expenses resulting from, among other things, damages incurred because of the theft of Vehicles, attempted theft of Vehicles, damage to Vehicles, loss or damage to other property, and economic losses resulting from loss of use of the Vehicles, were directly and proximately caused by the negligence and breaches of duties owed by Defendants, including, but not limited to, the following:

a.  Failing to properly design the Vehicles and their component parts;

b.  Failing to properly manufacture the Vehicles in full compliance with all federal and industry safety and anti-theft standards;

c.  Failing to properly test the Vehicles to assess, determine, eliminate, and/or reduce the risk or likelihood of thefts;

d.  Failing to comply with federal regulatory requirements to equip the Vehicles with mandatory anti-theft protection;

e. Failing to exercise reasonable care in connection with the manufacture, distribution, sale, and/or leasing of the Vehicles;

f. Placing in the channels of trade Vehicles that Defendants knew or, with reasonable care, should have known, were unreasonably dangerous and unsafe;

g. Marketing inherently unsafe and/or dangerous Vehicles;

h. Marketing the Vehicles as safe when Defendants knew or should have known that the Vehicles were dangerous, unsafe, had a history of thefts, and were prone to theft;

i. Failing to disclose to consumers the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds;

j. Failing to disclose the defects associated with  Vehicles to consumers when Defendants knew or should have known that such design rendered the Vehicles uniquely susceptible to theft;

k. Failing to warn consumers, including Amica's Insureds, that the Vehicles were uniquely susceptible to theft; and

l. Failing to withdraw or recall the Vehicles from the marketplace.

49. As a result of Defendants' failure to exercise reasonable care, Amica and its Insureds suffered damage, including property damage and the loss of use of the Vehicles, together with other damages, for which Defendants are liable.

WHEREFORE, Plaintiff respectfully demands that judgment enter on its behalf and against Defendants in the maximum amount allowed by law, plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Furthermore, Plaintiff demands judgment against Defendants in an amount that will adequately compensate it for its damages and losses, together with interest and costs.

## COUNT II
## STRICT LIABILITY

50. Amica incorporates by reference and realleges each preceding and succeeding paragraph as though fully set forth at length herein.

51. Defendants designed, manufactured, assembled, packaged, labeled, marketed, sold, supplied, and distributed the foregoing Vehicles with inadequate warnings, with the defects

associated with the vehicle, and in a defective and unreasonably dangerous condition under Section 402A of the Restatement (Second) of Torts, in each of the following ways:

a. Failing to properly design the Vehicles and their component parts;

b. Failing to properly manufacture the Vehicles in full compliance with all federal and industry safety and anti-theft standards;

c. Failing to properly test the Vehicles to assess, determine, eliminate, and/or reduce the risk or likelihood of thefts;

d. Failing to comply with federal regulatory requirements to equip the Vehicles with mandatory anti-theft protection;

e. Failing to exercise reasonable care in connection with the manufacture, distribution, sale, and/or leasing of the Vehicles;

f. Placing in the channels of trade Vehicles that Defendants knew or, with reasonable care, should have known, were unreasonably dangerous and unsafe;

g. Marketing inherently unsafe and/or dangerous Vehicles;

h. Marketing the Vehicles as safe when Defendants knew or should have known that the Vehicles were dangerous, unsafe, had a history of thefts, and were prone to theft;

i. Failing to disclose to consumers the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds;

j. Failing to disclose the Defects associated with the vehicle of the Vehicles to consumers when Defendants knew or should have known that such design rendered the Vehicles uniquely susceptible to theft;

k. Failing to warn consumers, including Amica's Insureds, that the Vehicles were uniquely susceptible to theft; and

l. Failing to withdraw or recall the Vehicles from the marketplace.

52. Defendants, by their failure to adequately warn consumers, including Amica's Insureds, and by virtue of the unreasonably dangerous conditions of the Vehicles caused by its design and manufacture, including the Defects associated with the vehicle, is strictly liable for Amica's damages, including property damage and the loss of use of the Vehicles, together with other damages.

9

WHEREFORE, Plaintiff respectfully demands that judgment enter on its behalf and against Defendants in the maximum amount allowed by law, plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Furthermore, Plaintiff demands judgment against Defendants in an amount that will adequately compensate it for its damages and losses, together with interest and costs.

**COUNT III**
**BREACH OF WARRANTIES**

53. Amica incorporates by reference and realleges each preceding and succeeding paragraph as though fully set forth at length herein.

54. Defendants were, at all relevant times: the manufacturers, distributors, and warrantors of the Vehicles; "merchants" of motor vehicles under R.I. Gen. Laws § 6A-2-104 and other applicable state laws; and "seller" of motor vehicles under R.I. Gen. Laws § 6A-2-103(a)(4) and other applicable state laws.

55. In the alternative, if Defendants were not the sellers of the Vehicles to Amica's Insureds, then Amica's Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Hyundai and Kia dealers or others with the intent that they be resold to consumers, including Amica's Insureds.

56. Amica's Insureds who purchased Vehicles are "buyers" within the meaning of R.I. Gen. Laws § 6A-2-103(a)(1) and other applicable state laws.

57. Amica's Insureds who leased Vehicles are "lessees" within the meaning of R.I. Gen. Laws § 6A-2-103(n) and other applicable state laws.

58. The Vehicles were at all relevant times "goods" within the meaning of R.I. Gen. Laws § 6A-2-103(g) and other applicable state laws.

59. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to R.I. Gen. Laws § 6A-2-314 and other applicable state laws.

60. Defendants expressly and impliedly warranted that the Vehicles and any parts thereof were safe, merchantable, and fit for the ordinary purposes for which they were sold or leased.

61. These warranties included, among other things, that the Vehicles manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation,

would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations.

62. Defendants' warranties were designed and intended for the benefit of Amica's Insureds as the ultimate consumers and users of the Vehicles.

63. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased, and that consumers, including Amica's Insureds, were relying on Defendants' skill and judgment to select and/or furnish suitable Vehicles.

64. Defendants also knew or had reason to know that Amica's Insureds and those utilizing the Vehicles relied on the warranties made by Defendants.

65. Defendants breached their warranties because the Vehicles were defective, not in merchantable condition, and unfit for their intended uses, and were not reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles lacked appropriate anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy federal regulations, resulting in a severe and highly dangerous risk of vehicle theft and causing the Vehicles to be prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

66. Defendants' acts and/or omissions, as complained of herein, breached the express and implied warranties because the Vehicles were unsafe, not of merchantable quality, and unfit for the ordinary purposes for which they were sold or leased.

67. Amica and its Insureds were excused from providing Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout the Complaint, Defendants have long known that the Vehicles were defective and Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Amica and its Insureds had no reason to believe that Defendants would have adequately repaired the Vehicles if they presented their Vehicles to Defendants for repair.

68. As a direct and proximate result of Defendants' breach of their express and implied warranties, Amica and its Insureds suffered damage, including property and the loss of use of their Vehicles, for which the Defendants are liable.

69. Amica, upon making payments to its Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by Amica, acquired the rights of its Insureds under policy provisions and by operation of law. Amica "stands in the

shoes" of its Insureds and is authorized to pursue all claims and causes of action belonging to its Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by Amica.

WHEREFORE, Plaintiff respectfully demands that judgment enter on its behalf and against Defendants in the maximum amount allowed by law, plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Furthermore, Plaintiff demands judgment against Defendants in an amount that will adequately compensate it for its damages and losses, together with interest and costs.

## COUNT IV
## BREACH OF CONTRACT

70.    Amica incorporates by reference and realleges each preceding and succeeding paragraph as though fully set forth at length herein.

71.    Defendants agreed to design, manufacture, produce, provide, and distribute the Vehicles that were safe, merchantable, and fit for their ordinary purposes.

72.    Defendants breached their contract by failing to design, manufacture, produce, provide, and distribute the Vehicles that were safe, merchantable, and fit for their ordinary purposes.

73.    As a direct and proximate result of Defendants' breach of contract, Amica and its Insureds suffered damage, including property and the loss of use of their Vehicles, for which the Defendants are liable.

WHEREFORE, Plaintiff respectfully demands that judgment enter on its behalf and against Defendants in the maximum amount allowed by law, plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Furthermore, Plaintiff demands judgment against Defendants in an amount that will adequately compensate it for its damages and losses, together with interest and costs.

## COUNT V
## DECEPTIVE TRADE PRACTICES

74.    Amica incorporates by reference and realleges each preceding and succeeding paragraph as though fully set forth at length herein.

75.    Defendants and Amica are "persons" within the meaning of R.I. Gen. Laws § 6-13.1-11(3).

12

76.     The Rhode Island Unfair Trade Practice and Consumer Protection Act ("RI CPA") makes unlawful the "any act or practice that is unfair or deceptive to the consumer." R.I. Gen. Laws § 6-13.1-11(6)(xiii).

77.     In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the RI CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles, as detailed above.

78.     Defendants had an ongoing duty to Amica and its Insureds to refrain from unfair or deceptive practices under the RI CPA in the course of their business. Specifically, Defendants owed Amica and its Insureds a duty to disclose all the material facts concerning Vehicles.

79.     Defendants engaged in one or more of the following unlawful acts or practices prohibited by R.I. Gen. Laws § 6-13.1-11: using or employing deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of a material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

80.     Defendants intended for Amica and its Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

81.     Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection.  These misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Amica and its Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

82.     Defendants' misrepresentations, omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions of Amica's Insureds to purchase and lease those vehicles, as Defendants intended. Amica's Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

83.    Amica's and its Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false or misleading, or otherwise learning that the Vehicles were defective, as alleged above. Amica and its Insureds did not, and could not, unravel Defendants' deception on their own.

84.    Had Amica and its Insureds known the truth about the Vehicles, it is reasonably likely they would not have purchased or leased the Vehicles, or would have paid significantly less for them.

85.    Amica and its Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

86.    Defendants' violations present a continuing risk to Amica and its Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Defects associated with the vehicle. Defendants' unlawful acts and practices complained of herein affect the public interest.

87.    Amica seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the RI CPA.

WHEREFORE, Plaintiff respectfully demands that judgment enter on its behalf and against Defendants in the maximum amount allowed by law, plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Furthermore, Plaintiff demands judgment against Defendants in an amount that will adequately compensate it for its damages and losses, together with interest and costs.

## COUNT VI
## FRAUD BY OMISSION AND CONCEALMENT

88.    Amica incorporates by reference and realleges each preceding and succeeding paragraph as though fully set forth at length herein.

89.    Defendants were aware of the defects associated with the Vehicles when they marketed and sold the Vehicles to Amica's Insureds.

90.    Having been aware of the defects within the Vehicles, and having known that Amica's Insureds could not have reasonably been expected to know of the defects, Defendants had a duty to disclose the defects to Amica's Insureds in connection with the sale and/or lease of the Vehicles.

91. In breach of their duties, Defendants failed to disclose the defects to Amica's Insureds in connection with the sale and/or lease of the Vehicles.

92. For the reasons set forth above, the defects within the Vehicles were material to the sale and/or lease of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by Amica's Insureds.

93. Defendants intended for Amica's Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their Vehicles were not defective.

94. Amica's Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Amica's Insureds did not, and could not, unravel Defendants' deception on their own.

95. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Amica and its Insureds.

96. If Defendants had fully and adequately disclosed the defects to consumers, Amica's Insureds would have seen such a disclosure.

97. Through their omissions and concealment with respect to the defects within the Vehicles, Defendants intended to induce, and did induce, Amica's Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

98. Had Amica and its Insureds known of the defects within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

99. As a direct and proximate result of Defendants' omissions, Amica's Insureds either overpaid for the Vehicles or would not have purchased the Vehicles. Accordingly, Defendants are liable to Amica and its Insureds for their damages in an amount to be proven at trial.

100. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Amica's and its Insureds' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by

law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

WHEREFORE, Plaintiff respectfully demands that judgment enter on its behalf and against Defendants in the maximum amount allowed by law, plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Furthermore, Plaintiff demands judgment against Defendants in an amount that will adequately compensate it for its damages and losses, together with interest and costs.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, the Plaintiff, Amica Mutual Insurance Company, prays for judgment against Defendants, and each of them, as to each cause of action as follows:

a. Payment to Amica for all damages resulting from the replacement or repair of the defective Vehicles, in an amount to be proven at trial;

b. Payment to Amica for all damages allowed by law resulting from theft or attempted theft of Defendants' defective Vehicles;

c. Restitution as authorized by law;

d. An award of reasonable attorneys' fees and costs, as provided and permitted by law;

e. Interest as provided by law, including but not limited to pre-judgment and post-judgment interest; and

f. Such other and further relief as this Court may deem just, equitable, or proper.

## **JURY DEMAND**

The Plaintiff, Amica Mutual Insurance Company, through its counsel, demands a jury trial on all claims and issues so triable.

Respectfully submitted,
Plaintiff,
Amica Mutual Insurance Company,

*/s/ John A. Donovan III*
John A. Donovan III, Esq. (5707)
SLOANE AND WALSH, LLP
652 George Washington Highway, Suite 302
Lincoln, RI  02865
401-495-6796
jdonovan@sloanewlash.com

Dated:  April 18, 2024

17